# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| VICTORIA LONG, | : | |
| Plaintiff, | : | |
| | | Case No. 3:09CV0463 |
| vs. | : | |
| | | District Judge Timothy S. Black |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Various health problems led Plaintiff Victoria Long to twice file for Disability Insurance Benefits ["DIB"].  The Social Security Administration denied her first DIB application during the early stages of administrative review.  (Tr. 46).  She did not appeal that denial, and her first DIB application is not at issue in this case.

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

This case concerns Plaintiff's second DIB application and her application for Supplemental Security Income ["SSI"], which she filed in December 2005. Plaintiff asserted a disability onset date of December 1, 2003.[2]

The Social Security Administration denied Plaintiff's second DIB application and SSI application at each stage of administrative review.  The most significant stage for present purposes involved an administrative hearing and a resulting decision by Administration Law Judge ["ALJ"] James I.K. Knapp.  In his decision, ALJ Knapp determined that Plaintiff was not under a "disability" as defined by the Social Security Act, and consequently was not eligible to receive DIB or SSI.  (Tr. 27-38).

ALJ Knapp's decision later became the final determination of the Commissioner of the Social Security Administration.  Such final determinations are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff now is due.

The case now is before the Court upon Plaintiff's Statement of Errors (Doc. # 8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. # 12), the administrative record, and the record as a whole.  At a minimum, Plaintiff seeks an Order remanding this case to the Social Security

---

[2]While the DIB application showed an onset date of December 31, 2005 (Tr. 70), and the SSI application showed an onset date of December 1, 2003 (Tr. 480), the onset date of disability was amended at the administrative hearing to September 28, 2007.  (Tr. 578-79).

Administration to correct certain alleged errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II.    BACKGROUND

Plaintiff was 53 years old at the time of the administrative decision, and thus was considered to be "closely approaching advanced age" for purposes of resolving her DIB and SSI claims. *See* 20 C.F.R. §§4 04.1563(d); 416.963(d);[3] (*see also* Tr. 70, 480). She has a high school education. *See* 20 C.F.R. § 416.964(b)(4); (*see also* Tr. 190). Plaintiff has worked in the past as a payroll clerk, an accounting clerk, and a dispatcher. (Tr. 99, 138-45, 174).

Plaintiff testified at the administrative hearing that her typing speed had been very slow on her last job, and that since she last worked in September 2007, she no longer was able to use a computer keyboard. (Tr. 592). Her arthritis pain prevented her from walking more than five to 10 minutes at a time; standing for more than 30 minutes; or sitting for more than 40 minutes. (Tr. 589). She did not think that she could lift more than five pounds, and could not lift a gallon of milk.[4] (Tr. 590). Plaintiff testified that she needed help from her daughter to complete household tasks. (Tr. 587-88).

---

[3]The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding SSI/DIB Regulations.

[4]One gallon of milk weighs about 8.5 pounds, or slightly more than one gallon of water. http//:www.wikianswers.com/Q/; *see* http//:www.unc.edu/~rowlett/units/dictG.html.

Plaintiff does not challenge the ALJ's evaluation of the medical evidence or his assessment of Plaintiff's residual functional capacity ["RFC"].  (*See* Doc. # 8 at 6-8).  Rather, Plaintiff challenges the ALJ's evaluation of the vocational evidence.

**Medical Expert Testimony.**  Dr. Richard Gardner, the medical expert, testified at the administrative hearing that Plaintiff's impairments established by the record include rheumatoid arthritis, primarily affecting her hands and feet. (Tr. 594-97).  Dr. Gardner testified that Plaintiff's rheumatoid factor was positive as early as 1999 and that her sedimentation ["sed"] rate has been consistently elevated to a moderate range, consistent with rheumatoid arthritis.  (Tr. 598). Nevertheless, Dr. Gardner opined that Plaintiff's rheumatoid arthritis does not meet Listing 14.09.  (Tr. 595).  He testified that Plaintiff would be limited to lifting 20 pounds occasionally and 10 pounds frequently.  (Tr. 596).  Dr. Gardner limited Plaintiff's standing, walking and/or sitting to six hours in an eight hour day. (*Id.*).  Dr. Gardner believed that Plaintiff occasionally could bend, stoop, or crawl, but he precluded work with ropes, scaffold or ladders.  (*Id.*).  Dr. Gardner offered no environmental restrictions as no active treatment for asthma appeared in the record.  (*Id.*).

**Vocational Expert Testimony.**  Eric Pruitt testified as a vocational expert ["VE"] at the administrative hearing.  (Tr. 599-603).  The VE testified as to

4

Plaintiff's past employment as a accounting clerk, identified as sedentary, at the skilled level; payroll clerk, identified as sedentary, semi-skilled level; and dispatcher, identified as sedentary and semi-skilled. (Tr. 600).

The VE was asked to assume a claimant with Plaintiff's vocational profile and a RFC for light work that allowed for occasional crawling, crouching, stooping, kneeling or climbing stairs; no climbing of ladders or scaffolds; frequent, not constant, handling and fingering; and no concentrated exposure to fumes, smoke, dust, odors, or poor ventilation. (Tr. 600). The VE responded that such an individual could not perform Plaintiff's past work, with frequent reaching and handling being the only restriction that ruled out all those jobs. (Tr. 601). The VE explained that Plaintiff's past jobs would require continuous, or 66 to 99 percent, handling and fingering. (*Id.*).

The ALJ next asked what unskilled jobs would be available with the above restrictions. (Tr. 601). In the light range, the VE testified that the hypothetical person could be a carton packaging machine operator, cafeteria attendant, or information clerk. (*Id.*). The VE also identified three sedentary occupations, including an automatic grinding machine operator, ink printer operator, and surveillance system monitor. (*Id.*).

When asked by the ALJ to assume no handling restrictions, but add a restriction to low stress work, the VE stated that Plaintiff would be able to perform all past work. (Tr. 602). Again, the critical factor was the frequent handling and reaching. (*Id.*). The VE testified that he used the *Dictionary of Occupational Titles* ["DOT"][5] in responding to the ALJ's hypothetical. (*Id.*).

## III. THE "DISABILITY" REQUIREMENT & ADMINISTRATIVE REVIEW

### A. Applicable Standards

To be eligible for SSI or DIB, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job, and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70. A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270,

---

[5]The DOT is available in printed and electronic form from many sources, including Westlaw and the Department of Labor. *See, e.g.*, http://www.oalj.dol.gov/LIBDOT.HTM.

6

274 (6th Cir. 1997); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4); (*see also* Tr. 28-30). Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

**B.     The ALJ's Decision**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2007. (Tr. 30). The ALJ also found that although Plaintiff engaged in substantial gainful activity from January 1, 2007 until at least September 2, 2007, she had not otherwise engaged in substantial gainful activity since November 1, 2005. (*Id.*).

The ALJ found at Step 2 that Plaintiff has the severe impairments of rheumatoid arthritis and a depressive disorder. (*Id.*). The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4. (Tr. 33).

The issues in this case arise at the fourth step of the sequential analysis. At Step 4, the ALJ found that Plaintiff lacked the RFC to (1) lift more than 10 pounds frequently or 20 pounds occasionally; (2) crawl, crouch, stoop, kneel, or climb stairs more than occasionally; (3) climb ladders or scaffolds; (4) use her hands for constant handing or fingering while retaining the ability to perform such bilateral hand manipulation on a frequent or occasional basis; (4) have more than occasional contact with the public; or (5) do greater than average stress work activity (*i.e.*, no job involving work that is hazardous or that involves frequent changes in work duties). (Tr. 34).

8

Relying on the VE testimony, the ALJ further found that Plaintiff remained capable of performing her past relevant work as an accounting clerk, payroll clerk, and dispatcher. (Tr. 37). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him ultimately to conclude that Plaintiff was not under a disability and hence not eligible for SSI or DIB. (Tr. 38).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

9

Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.   **DISCUSSION**

   A.   **The Parties' Contentions**

Plaintiff contends that given the evidence of record, including the VE's testimony and Plaintiff's description of her past relevant work, the ALJ's finding at Step 4 of the sequential evaluation is not supported by substantial evidence. Plaintiff further argues that there was no alternative finding at Step 5 of the sequential evaluation. The Commissioner failed to meet his burden of coming

10

forward with the proof of other jobs existing in significant number in the national economy that Plaintiff could perform.

Plaintiff urges that reversal is appropriate since there is no evidence of other jobs that she could perform.

The Commissioner argues that the ALJ reasonably determined that despite her impairments, Plaintiff could perform her past relevant work. The Commissioner agrees that the ALJ incorrectly relied on the VE's testimony in finding Plaintiff could perform her past relevant work. Nevertheless, the Commissioner contends that the ALJ's ultimate determination was correct that, with an RFC for a range of light work that included being able to do frequent handling and fingering, Plaintiff could perform her past relevant work.

### B. <u>Analysis</u>

At the fourth step, the claimant must show that she is not capable of returning to any past relevant work. 20 CFR § 416.920(a)(4)(iv). If the claimant makes this showing, the burden shifts to the Commissioner to demonstrate that, based on the claimant's residual functional capacity, together with her age, education, and work experience, she could make an adjustment to other work and is not, therefore, disabled. 20 CFR § 416.920(a)(4)(v).

In the instant case, the ALJ's analysis stopped at step four. He determined that Plaintiff retained the RFC for light work. (Tr. 34). He further determined that this RFC would allow her to return to past relevant work as a accounting clerk, payroll clerk, and dispatcher. (Tr. 37). The ALJ found that, "Based on the testimony of Mr. Pruitt, the claimant retains the functional capacity to do each of her past relevant work, and applying the above-cited Regulation, a finding of "not disabled" is appropriate." *Id.* Plaintiff contends that this determination is unsupported by substantial evidence.

Plaintiff argues that the ALJ "appeared to have confused" the VE's testimony. The ALJ noted in his decision that

> [the VE] explained that these jobs involved as much as "frequent" handling and fingering type activities but also stated that they did not require "constant" handling or fingering. He also said he considered the cited jobs to be low stress in nature, though I find that claimant is limited to only average stress work. The jobs involve no more than occasional public contact. Mr. Pruitt further testified that someone with claimant's vocational profile and physical residual functional capacity as set forth above could perform this past relevant work.

(Tr. 37). However, the VE actually testified that Plaintiff's past relevant work required her to handle and finger continuously, "or 66 to 99 percent of the day." (*See* Tr. 601). The VE's testimony to that effect is consistent with Plaintiff's own testimony about her past relevant work, where she reported that her job required

12

her to "write, type or handle small objects" up to eight hours a day.  (Tr. 139-43, 165).

The Court also notes that while the VE identified Plaintiff's past relevant work as "sedentary," the ALJ determined that Plaintiff could perform a limited range of "light" work.  A proper hypothetical question is one that accurately describes the claimant "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant."  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *see Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff next challenges the ALJ's determination with respect to Step 5, which requires, when a claimant cannot perform her prior work, that the ALJ consider "'reliable job information' available from various publications" as evidence of the claimant's ability to do other work "that exists in the national economy."  S.S.R. 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) (citing 20 C.F.R. § 416.966(d)).  Such publications include the DOT, which provides "information about jobs (classified by their exertional and skill requirements) that exist in the national economy."  20 C.F.R. § 416.969.  ALJs also are authorized to

consider the testimony of vocational experts as a source of occupational evidence. S.S.R. 00-4p, 2000 WL 1898704, at *2; *see also Lindsley*, 560 F.3d 601 (6th Cir. 2009).

In this case, the ALJ failed to make any Step 5 finding. (*See* Tr. 37-38). As noted above, during the administrative hearing, the ALJ asked the VE to identify sedentary and light jobs a person with Plaintiff's physical limitations could perform. (Tr. 601). The VE responded that representative light jobs included a carton packaging machine operator, a cafeteria attendant, and an information clerk. (*Id.*). As Plaintiff notes, however, the VE was not asked if these jobs could be performed by a person restricted to low stress work with no fixed production quotas, no above-average pressure to produce, and only occasional contact with the public. Absent those factors, the hypothetical posed to the VE was incomplete.

Under these circumstances, the Court concludes that the matter must be remanded to consider whether Plaintiff can work despite her lessened capacity.

## VI. REMAND IS WARRANTED

Because additional fact finding is required, this matter must be remanded for further proceedings rather than for an award of benefits. Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g) due to problems set forth above. On remand, the

ALJ should be directed (1) to re-format the hypothetical questions to the VE to more adequately describe Plaintiff in all pertinent respects for further vocational consideration consistent with this decision; and (2) to determine anew, through the sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for DIB and SSI.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

    **IT THEREFORE IS RECOMMENDED THAT**:

1. The Commissioner's final non-disability determination be VACATED;

2. No finding be made as to whether Plaintiff Victoria Long was under a "disability" within the meaning of the Social Security Act;

3. This case be REMANDED to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be TERMINATED on the docket of this Court.


October 19, 2010                                      s/Sharon L. Ovington
                                                                   Sharon L. Ovington
                                                      United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981).